CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

SOPHIA COOPER (CABN 320373)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-6473
    Sophia.cooper@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>GENESIS CALIX-CENTENO,<br><br>    Defendant. | CASE NO. 3:25-CR-00346 RS<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING**<br><br>Hearing Date: November 4, 2025<br>Hearing Time: 9:30 a.m.<br>Judge: Hon. Richard Seeborg<br>Court: Courtroom 3; 17th Floor |

## I. OVERVIEW

The government and the defendant, GENESIS CALIX-CENTENO, jointly request that the Court accept the proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (hereafter, "the Tenderloin") through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of street-level dealing where the defendant has limited criminal history with no federal convictions, leading the government to seek expedited prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order

that immediately excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking. For the reasons set forth below, the government and the defendant believe that a below-Guidelines sentence—accounting for the time already served plus one court day in this expedited prosecution—alongside this geographical restriction meet the statutory requirements of Section 3553(a).

## II. MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as the defendant's change of plea, or as shortly thereafter as is practicable. This will achieve the expedited proceeding contemplated by both parties. The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record." Fed. R. Crim. Proc. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1); U.S.S.G. § 6A1.1; Crim. L.R. 32-1(b). The government respectfully submits that the record here—including the criminal complaint, the plea agreement, the information, and the parties' sentencing memoranda, which each and collectively detail the offense conduct and other factors relevant under Section 3553—enable the Court to meaningfully exercise its sentencing authority under Section 3553 and to proceed to sentencing without the need for a presentence investigation report. The parties request that the Court explain its findings and the sufficiency of the record at sentencing.

## III. APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government calculates the following Guidelines range:

a. **Base Offense Level** [U.S.S.G. § 2D1.1(a)(5), (c)(8)]: **12**
b. **Acceptance of Responsibility** [U.S.S.G. § 3E1.1]: **-2**
c. **Zero-Point Offender Adjustment**: [U.S.S.G. § 4C1.1]: **-2**
d. **Adjusted Offense Level**: **8**

1  The government calculates a Criminal History Category of I (0 points).[1]

2  An Adjusted Offense Level of 8 and a Criminal History Category of I yields an advisory Guidelines range of 0–6 months.  *See* U.S.S.G. ch. 5, pt. A.

4  The government also seeks a three-year term of supervised release (as required by statute) and imposition of the mandatory $100 special assessment.

### IV.   SENTENCING RECOMMENDATION

Consistent with the plea agreement in this case, the parties jointly request a sentence of time served plus one court day and a three-year term of supervised release that includes, among other things, a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release.  This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from which the defendant's drug trafficking conviction arises.

**A.   Section 3553 Factors**

   1.   *Nature and Circumstances of Offense; History and Characteristics of Defendant*

The defendant is a Honduran national.  According to the Department of Homeland Security, the defendant lacks immigration status and/or is removable under U.S. immigration law.  There is an immigration detainer in place such that the parties expect the defendant will be transferred to the custody of the Department of Homeland Security for removal proceedings following her release from the custody of the U.S. Marshals Service.

On October 15, 2025, at approximately 12:05 a.m., the defendant and her co-defendant were arrested after selling fentanyl to an undercover San Francisco Police Department officer (UC).  Dkt. 1.  The facts are as follows.  On the night in question, the UC was walking on Franklin Street and observed a large group of people on the northeast corner of Franklin Street and McAllister Street.  The UC observed an individual, later identified as the defendant, wearing a white puffy jacket selling what appeared to be fentanyl to someone in the large group.  The UC approached the defendant and gave her $40.00 of U.S. currency.  The defendant kneeled down and her co-defendant handed her a bag of fentanyl.  The defendant weighed the fentanyl with a small scale and gave it to the UC.  After the

---

[1] The government has reviewed and produced in discovery the criminal history report for the defendant available through criminal records databases.

transaction, the UC walked south on Franklin Street toward Grove Street. The defendant and her co-defendant stayed in the vicinity of McAllister Street and Franklin Street. Dkt. 1 at ¶¶ 8–10. The defendants were subsequently arrested at the scene. Law enforcement found $65 and one cell phone on the defendant's person. *See* id. ¶ 17. The currency included the serial numbers of funds provided to the defendant by the UC for the controlled purchase. *See* Plea Agreement ¶ 2.

The fentanyl that the defendant and her co-defendant sold to the UC weighed roughly 2.2 grams (gross) and tested presumptive positive for fentanyl using a TruNarc Analyzer. *See* id. ¶¶ 14-15, Plea Agreement, ¶ 2. The defendant has admitted that the phone and money seized from her are forfeitable to the government. *See* Plea Agreement ¶ 13.

After her arrest on October 15, 2025, the defendant was charged by complaint and made her initial appearance in this case on October 16, 2025. Dkt 6. She waived detention findings at her initial appearance and has remained in custody since then. On October 23, 2025, she was arraigned on an Information charging one count of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), along with aiding and abetting, in violation of 18 U.S.C. §2(a). *See* Dkt. 15. In the plea agreement, the defendant acknowledges that she knew (i) the substance she possessed and sold to an undercover law enforcement officer on October 15, 2025, was fentanyl; and (ii) it was illegal for her to sell fentanyl. *See* Plea Agreement ¶ 2. She further acknowledges that her conviction in this case "makes it practically inevitable and a virtual certainty that [she] will be removed or deported from the United States." Plea Agreement ¶ 1.

> 2. ***Need for Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment; to Afford Adequate Deterrence to Criminal Conduct; and to Protect the Public from Further Crimes of the Defendant***

The Tenderloin, defined in the plea agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis. As the Court is well aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. The Tenderloin open-air drug market not only creates suffering for its participants—including staggering amounts of overdoses and fatalities—but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself.

The applicable Guidelines range for the defendant's conduct is 0–6 months in light of the relevant conduct and amount of fentanyl the defendant and her co-defendant sold to the UC. The proposed sentence—of time served plus one day and a three-year term of supervised release with a highly-restrictive geographic restriction—is a downward variance from the applicable Guidelines range but one that the government submits is appropriate given the defendant's status as a street-level drug dealer, the unique problem facing the Tenderloin, and the need for deterrence and protection of the public. The defendant has no prior criminal convictions. Therefore, the parties' proposed resolution is appropriate.

To benefit from an agreement by the government to recommend a sentence of time served plus one day, the defendant waived detention and has been in continuous custody since her arrest on federal charges. She also waived indictment, agreed promptly to plead guilty and proceed to sentencing, and agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition from the Tenderloin. The defendant is on notice that a return to the Tenderloin (in violation of her supervised release terms) will invite new charges and/or supervised release violations. She is also aware that it is virtually certain that she will be deported following the conclusion of her case.

This disposition results in a drug-trafficking conviction within weeks of arrest (not months or years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from returning to the Tenderloin. The speed with which this case has moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin. And with this federal conviction, the defendant is now on notice that any subsequent criminal conduct will be met with the government advocating for a far greater sentence.

**B.     The Necessity of the Proposed Special Conditions of Supervised Release**

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty. *See* 21 U.S.C. § 841(b)(1)(C). It is also essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug dealers from the Tenderloin (given the defendant has remained in custody since he was arrested) and to effect a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated

herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, she will also be prohibited from entering the Tenderloin without prior approval of the Probation Office:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Laguna Street, on the north by Sutter Street, on the east by Powell Street and 5th Street, and on the south by Folsom Street.

Plea Agreement ¶ 10. Combined with a suspicionless search condition—to which the parties have also agreed, *see id.*—the goals of Section 3553(a), including protection of the public and meaningful deterrence, will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking: defendants previously convicted of selling drugs in the Tenderloin are prone to recidivate, and they frequently return to the Tenderloin to do so, even following removal from the United States. *See, e.g.*, *United States v. Erazo-Centeno*, No. 3:23-cr-00002; *United States v. Gamez-Arguilio*, No. 3:17-cr-00553.

On the facts of this particular case, and in light of the provisions of the parties' plea agreement, the government respectfully submits that the disposition recommended herein is sufficient but not greater than necessary to accomplish the goals of Section 3553(a).

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to time served plus one court day, to be followed by a term of supervised release of three years, to include the special conditions of supervision agreed to by the parties in the plea agreement, including the stay-away condition from the Tenderloin.

DATED: October 29, 2025                                   Respectfully Submitted,

CRAIG H. MISSAKIAN
United States Attorney


  */s/ Sophia Cooper*
SOPHIA COOPER
Assistant United States Attorney